JUDGE BUCHWALD

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600 / Fax:  (516) 767-3605
Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CHANGBAI SHIPPING CO. LTD,

                            Plaintiff,

            v.

BELARUSIAN SHIPPING CO. a/k/a BELORUSSIAN
SHIPPING CO. a/k/a ZAO BELORUSSKAYA
SUDOHODNAYA KOMPANIYA, BEARBULK
(UK) LIMITED, and TRASER ALLIANCE LTD.,

                            Defendants.
-------------------------------------------------------------X



08  CV  _____

**VERIFIED COMPLAINT**

        Plaintiff CHANGBAI SHIPPING CO. LTD. (hereinafter "CBC") by its attorneys, as and

for its Verified Complaint against the Defendants BELARUSIAN SHIPPING CO. a/k/a

BELORUSSIAN SHIPPING CO. a/k/a ZAO BELORUSSKAYA SUDOHODNAYA

KOMPANIYA (hereinafter "BSC"), BEARBULK (UK) LIMITED (hereinafter

"BEARBULK"), and TRASER ALLIANCE LTD. (hereinafter "TRASER"), alleges upon

information and belief as follows:

                                <u>JURISDICTION</u>

        1.        This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure, and also falls under this Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. § 1333.

        2.        The Court also has jurisdiction pursuant to 9 U.S.C. § 1, et seq. and 9 U.S.C. §

201, et seq.

## THE PARTIES

3.    At all times material hereto, Plaintiff CBC was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business in Hong Kong.

4.    The plaintiff CBC is the owner and/or disponent owner of the ocean-going, bulk cargo vessel named the M/V RM POWER.

5.    At all times material hereto, Defendant BSC was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with offices at 3 V. Khoruzhey Str., Minsk, 220005, Belarus.

6.    The Defendant BSC is a charterer of ocean-going vessels.

7.    At all times material hereto, Defendant BEARBULK was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office at 2nd Floor Marlborough House, 298 Regents Park Road, Finchley, London, N3 2TJ, United Kingdom, and was at all times an alias, alter-ego, and/or paying agent, funding agent, or receiving agent of Defendant BSC.

8.    At all times material hereto, Defendant TRASER was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with a place of business in Belize City, Belize, and was at all times an alias, alter-ego, and/or paying agent, funding agent, or receiving agent of Defendant BSC.

## AS A FIRST CAUSE OF ACTION FOR
## BREACH OF MARITIME CONTRACT FOR UNPAID HIRE

9.    On or about July 10, 2008, CBC, as owners of the M/V RM POWER, entered into a time charter party agreement (hereinafter "the maritime contract") with defendant BSC for the

2

use of the M/V RM POWER by BSC for a certain period of time in exchange for the payment of hire to CSC.

10.     The maritime contract was in the form of a fixture recap and a pro-forma charter party, which provided for, among other things, the daily hire rate, the payment of hire every fifteen (15) days in advance, the payment of port charges during the vessel's voyage, and that all disputes would be governed by English law and be settled by London Arbitration.

11.     In accordance with the terms and conditions of the maritime contract, the vessel was delivered to BSC on July 20, 2008.

12.     Hire was earned, and the first hire payment was received on August 1, 2008, in the form of an electronic funds transfer from defendant BEARBULK, on behalf of BSC, in the amount of US $1,289,485.05.

13.     While BSC continued to make use of the vessel, a second hire payment, became due on August 4, 2008, and a third hire payment became due on August 19, 2008.  Despite due demand by CSC, neither BSC or BEARBULK have made any payments towards the two outstanding hire payments owed.

14.     The failure to make the second and third hire payments constitutes a breach of the maritime contract.

15.     The total amount of hire payments due and owing to plaintiff CSC by BSC and/or BEARBULK for the second and third hire payments under the maritime contract is US $903,499.89.

AS A SECOND CAUSE OF ACTION FOR
REPUDIARY BREACH OF A MARITIME CONTRACT

16.     Plaintiff repeats, reiterates and realleges paragraphs 1 through 15 with the same force and effect as if fully set forth herein.

17.    Under English law, CSC has a cause of action against BSC for breach of contract because BSC has expressed and/or evidenced its clear intention not to fulfill its obligations under the maritime contract.

18.    Defendant BSC's failure, despite due demand, to make the second and third hire payments, evidences BSC's clear intention not to fulfill its obligations under the subject maritime contract. This non-performance and breach of contract by BSC will result in damages to CSC.

19.    As a result of defendant BSC's repudiary breach of the maritime contract, CSC must now re-charter the vessel on the open market. The present rate for vessels is significantly lower than the contractual rate agreed to in the maritime contract. The difference between the actual contract rate and the prevailing market rate is estimated at US $38,750.00 per day.

20.    For the remaining 54.6306 days on the voyage, this amounts a total difference of US $2,116,935.75, an amount owed to CSC by BSC as a result of its repudiary breach of the maritime contract.

<u>AS A THIRD CAUSE OF ACTION FOR UNPAID PORT CHARGES</u>

21.    Plaintiff repeats, reiterates and realleges paragraphs 1 through 20 with the same force and effect as if fully set forth herein.

22.    As a result of BSC's breach of the maritime contract, CSC was required to pay Beeline Shipping Agencies Pvt Ltd. various port charges amounting to US $62,240.66 to secure the release of the M/V RM POWER.

23.    Under the terms and conditions of the maritime contract, the port charges were to be paid by BSC and, to date, no payment has been received by CSC for the port charges.

24.    Although duly demanded, BSC has failed to pay any port charges to CSC, in breach of the maritime contract, leaving amount of US $62,240.66 due and owing to CSC.

AS A FOURTH CAUSE OF ACTION AGAINST<br>BEARBULK BASED UPON ALTER-EGO LIABILITY

25.    Plaintiff repeats, reiterates and realleges paragraphs 1 through 24 with the same force and effect as if fully set forth herein.

26.    At all material times, there existed such unity of ownership and interest between Defendant BSC and Defendant BEARBULK, that no separation exists between them and the corporate form of Defendant BSC has been disregarded such that Defendant BEARBULK primarily transacts the business of Defendant BSC, and this is specifically so with respect to the operation of the M/V RM POWER.

27.    Upon information and belief, at all material times, Defendant BEARBULK operated in the name of Defendant BSC, such that the Defendants used their names interchangeably with design to fraudulently avoid payment of just debts to their creditors.

28.    Upon information and belief, BEARBULK is simply an alias of BSC and/or *vice versa*.

29.    In the alternative, Defendant BEARBULK is merely a shell corporation through which BSC conducts its business.

30.    As between BSC and BEARBULK there is a commonality of control and management in that the companies have an overlap of ownership, officers, directors and employees.

31.    Upon information and belief, at all material times, Defendant BSC and Defendant BEARBULK did not operate at arms length.

5

32.    At all material times, there has been an intermingling of funds between Defendant

BSC and Defendant BEARBULK and this was especially so with respect to the M/V RM

POWER in that all money transfers for both companies were controlled and executed by the

Defendant BEARBULK.

33.    The Defendant BSC utilizes the Defendant BEARBULK to transfer and receive

funds being paid in United States dollars through the Southern District of New York on its

behalf, as detailed above in paragraph 12.

34.    Upon information and belief, at all material times, Defendant BSC dominated,

controlled and used Defendant BEARBULK for its own purposes such that there was, and is, no

meaningful difference between the two entities.

35.    There are sufficient reasonable grounds to create an inference that Defendant

BEARBULK is the alter-ego of Defendant BSC and, therefore, Plaintiff CSC has a valid prima

facie *in personam* maritime claim against Defendant BEARBULK based upon alter-ego liability.

36.    The Defendant BEARBULK is liable, on a theory of alter-ego, for the full amount

of the maritime claim that is asserted against the Defendant BSC as set forth in this Verified

Complaint.

### AS A FIFTH CAUSE OF ACTION AGAINST
### TRASER BASED UPON ALTER-EGO LIABILITY

37.    Plaintiff repeats, reiterates and realleges paragraphs 1 through 36 with the same

force and effect as if fully set forth herein.

38.    At all material times, there existed such unity of ownership and interest between

Defendant BSC and Defendant TRASER, that no separation exists between them and the

corporate form of Defendant BSC has been disregarded such that Defendant TRASER primarily

transacts the business of Defendant BSC.

39.    Upon information and belief, at all material times, Defendant TRASER operated in the name of Defendant BSC, such that the Defendants used their names interchangeably with design to fraudulently avoid payment of just debts to their creditors.

40.    Upon information and belief, TRASER is simply an alias of BSC and/or *vice versa*.

41.    In the alternative, Defendant TRASER is merely a shell corporation through which BSC conducts its business.

42.    As between BSC and TRASER there is a commonality of control and management in that the companies have an overlap of ownership, officers, directors and employees.

43.    Upon information and belief, at all material times, Defendant BSC and Defendant TRASER did not operate at arms length.

44.    At all material times, there has been an intermingling of funds between Defendant BSC and Defendant TRASER.

45.    The Defendant BSC utilizes the Defendant TRASER to transfer and receive funds being paid in United States dollars through the Southern District of New York on its behalf. Specifically on August 3, 2007, Defendant TRASER effected a payment of US $282,903.76 on behalf of Defendant BSC.

46.    Upon information and belief, at all material times, Defendant BSC dominated, controlled and used Defendant TRASER for its own purposes such that there was, and is, no meaningful difference between the two entities.

47.     There are sufficient reasonable grounds to create an inference that Defendant
TRASER is the alter-ego of Defendant BSC and, therefore, Plaintiff CSC has a valid prima facie
*in personam* maritime claim against Defendant TRASER based upon alter-ego liability.

48.     The Defendant TRASER is liable, on a theory of alter-ego, for the full amount of
the maritime claim that is asserted against the Defendant BSC as set forth in this Verified
Complaint.

<u>AWARDABLE INTEREST, FEES, AND COSTS</u>

49.     As previously indicated above, the maritime contract provide that any disputes
arising under the maritime contracts are subject to resolution under English Law and
determination by a London arbitration panel, none of which is deemed waived.

50.     Furthermore, the award of interest, fees and costs is allowed under applicable
foreign law and is regularly awarded in maritime matters such as the subject dispute.  The
estimated allowable interest, fees and costs for the arbitration of CSC's claim against the
Defendants is approximately US $962,730.83.

<u>PRAYER FOR RELIEF</u>

51.     Notwithstanding the fact that the liability of the Defendants is subject to a
determination by an arbitration panel in London, there are now, or will be during the pendency of
this action, certain assets, accounts, freights, hire payments, monies, charter hire, credits, effects,
CHIPS credits, electronic fund transfers, payments for bunkers, goods or services, bills of lading,
cargo, debts and the like belonging to or claimed by the Defendants within this District and held
by various parties, as garnishees.

52.     Plaintiff believes that some of these assets, in bank accounts and/or as funds being
transferred through intermediary banks, are located in this District in the possession of

garnishees, including ABN AMRO Bank, American Express Bank, Ltd., Bank of America, Bank of New York Mellon, Barclays Bank, Citibank NA, Deutsche Bank, HSBC (USA), JP Morgan Chase Bank, Standard Chartered Bank, UBS AG, Wachovia Bank, CHIPS, and possibly other banks or financial institutions located in New York.

53.    As set forth in the accompanying declaration of Andrew J. Warner, the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

54.    Because this Verified Complaint sets forth an *in personam* maritime claim against the Defendants and because the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the requirements for a Rule B attachment and garnishment are met and Plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the Defendants and/or *quasi in rem* jurisdiction over the property of the Defendants so that an eventual judgment and/or award can be satisfied.

55.    In addition to an attachment in the full amount of the claim as set forth above, Plaintiff also seeks an attachment over an additional sum to cover awardable attorneys' fees and costs which are recoverable pursuant to English law in the London arbitration.

WHEREFORE, Plaintiff prays as follows:

A.    That the Defendants be summoned to appear and answer this Verified Complaint;

B.    That the Defendants not being found within this District, as set forth in the Declaration of Andrew J. Warner, then all of its assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like

belonging to or claimed by the Defendant within this District up to the amount sued for herein be attached pursuant to Supplemental Rule B and to pay Plaintiff's damages;

C.    That this Court retain jurisdiction over this matter through the entry of a judgment either by this Court, and/or the London arbitration panel, so that judgment may be entered in favor of Plaintiff for the amount of its claim with costs, i.e. **US $4,045,407.13**, and that a judgment of condemnation and sale be entered against the property arrested and attached herein in the amount of Plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

D.    That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
      August 29, 2008

                                  CHALOS, O'CONNOR & DUFFY, LLP
                                  Attorneys for Plaintiff

         By:

                                  Eugene J. O'Connor (EO-9925)
                                  Timothy Semenoro (TS-6847)
                                  Andrew J. Warner (AW-5534)
                                  366 Main Street
                                  Port Washington, New York 11050
                                  Tel:  (516) 767-3600 / Fax:  (516) 767-3605